# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| EMMA, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. _____ ) ) |
| MICROSTRATEGY, INC., | ) ) |
| Defendant. | ) |

## COMPLAINT

The plaintiff, Emma, Inc., for its Complaint and in support of its causes of action against the defendant, states as follows:

### Parties

1. Plaintiff Emma, Inc. is a corporation organized and existing under the laws of the State of Tennessee and headquartered in Nashville, Tennessee.

2. Upon information and belief, Defendant MicroStrategy, Inc. ("MicroStrategy") is a corporation organized and existing under the laws of the State of Delaware and headquartered in the Commonwealth of Virginia.

### Jurisdiction

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332.

4. This Court has *personam* jurisdiction over MicroStrategy who, upon information and belief, has conducted business within the State of Tennessee, whose unlawful activities alleged herein has impacted commerce within the State of Tennessee, and/or has damaged a company headquartered in Tennessee.

## Facts

5. Headquartered in Nashville, Tennessee, Plaintiff provides marketing and advertising services to its customers, with a focus on electronic marketing and advertising.

6. On September 2, 2003, Plaintiff became the owner of U.S. Trademark Reg. No. 2,758,869 for the mark, emma®. Plaintiff has consistently used its emma® mark in connection with its products and services.

7. On September 30, 2009, the United States Patent and Trademark Office accepted Plaintiff's affidavit denoting the emma® trademark as being incontestable pursuant to 15 U.S.C. § 1065.

8. Plaintiff has built a business model that is among the pinnacle in its industry. Through its emma® trademark, Plaintiff's business is renowned as being among the top in its industry. An example of Plaintiff's logo utilizing the emma® trademark is filed herewith as Exhibit 1.

9. Plaintiff has experienced robust growth such that it has over 35,000 customers and more than one hundred employees in multiple offices throughout the United States. Plaintiff has developed the "emma" brand into one of the strongest brands in both the electronic marketing & advertising and Software as a Service marketplaces and has invested heavily not only in building the "emma" brand, but also in maintaining its brand presence. Plaintiff promotes and markets its services on the Internet and elsewhere using the "emma" name. If an Internet user conducts a Google search for the term "emma," Google's results lists Plaintiff's website, http://www.myemma.com, as the first link.

10. Over the past few years, Plaintiff has been evolving its product from a

mostly email centric one to more of a communications and marketing platform. In 2009, Plaintiff launched its surveys and forms feature and, thereafter, changed its tag line from "email marketing in style" to "communicate in style." Within the last year, Plaintiff has focused on expanding its product and services to include more opportunities for its clients to utilize emma on social networks, including Facebook.com and Twitter. For instance, using emma's Facebook "Share" feature, Plaintiff's customers' emails are visible and shareable on www.facebook.com.

11. As of May 31, 2011, Plaintiff registered for the Apple Store iOS Developer Program (ID#: 48V2755FGK), whereby Plaintiff was approved by Apple Inc. to build an application for the Apple Store. This application will allow Plaintiff's emma application to be available in the Apple store, and it will allow Plaintiff's customers access the emma application via an iPhone. Plaintiff anticipates that this application will be launched in the very near future, as Emma's development of the Apple application has been underway since approximately May of 2011.

12. Through Plaintiff's success, its emma® mark has become increasingly known. As a result of Plaintiff's success and dynamic growth, it has been recognized as one of the fasting growing small companies in the country. For example, among other accomplishments, Plaintiff has been recognized as among the "Inc. 500/5000" fastest growing companies for the last three years, it has been recognized by Inc. Magazine as a top small company workplace in 2011, it has been recognized as a Top 100 winner by the Initiative for a Competitive Inner City for the last two years (#5 & #10, respectively), it has been recognized as part of the "Tennessee Hot 100," and it has been recognized in the "Nashville Best in Business."

13. MicroStrategy is a provider of business intelligence technology. Upon

8864100_1.DOC
Case 3:11-cv-00926   Document 1   Filed 09/30/11   Page 3 of 12 PageID #: 3

information and belief, MicroStrategy became the owner of the web domain: http://www.emma.com/ in the 1990s. Before 2011, however, MicroStrategy never consistently operated a website from that web domain, and it did not otherwise make use of the name "emma."

14. MicroStrategy has been aware of Plaintiff's business and use of the "emma" mark for several years. Over the last eight years, Plaintiff has approached MicroStrategy on multiple occasions about purchasing or leasing the http://www.emma.com/ web domain. True and correct correspondence reflecting certain of the parties' communications with MicroStrategy is filed herewith as Exhibit 2.

15. In approximately Summer 2011, MicroStrategy launched an application for Facebook and Apple products called "emma." The application allows MicroStrategy customers to advertise and promote their own goods and services. MicroStrategy has marketed, advertised and promoted the "emma" product to the general public.

16. A depiction of MicroStrategy's depiction of the "emma" name as part of its logo is filed herewith as Exhibit 3. As with Plaintiff's use of the term, "emma," MicroStrategy uses the term, "emma" in letters that are all lower-case. The font used in MicroStrategy's depiction of "emma" is very similar to the font used by Plaintiff. In its promotions, MicroStrategy has listed the term, "the friendly marketplace" (all in lower case letters), directly under the term, "emma." This is similar to Plaintiff's use of the term, "communicate in style" (all in lower case letters), directly under the term, "emma," in Plaintiff's disseminations.

17. Plaintiff did not authorize MicroStrategy to make use of the "emma" name.

18. MicroStrategy's use of the emma® mark has caused confusion among

customers and potential customers, and MicroStrategy's continued use of the "emma" name will lead to continued confusion. An example of such confusion is set forth in the correspondence filed herewith as <u>Exhibit 4</u>.

19. Plaintiff has devoted considerable financial and human resources to make use of its emma® trademark in marketing efforts, including building strong brand awareness and a positive brand image. Plaintiff has developed substantial goodwill, recognition, and common law trademark rights in the emma® trademark throughout the United States and abroad. Over the past three years, Plaintiff has spent more than $5,000,000.00 on marketing efforts to promote its "emma" brand and business.

20. By using Plaintiff's emma® mark, MicroStrategy appears to have endeavored to unfairly capitalize from the goodwill associated with Plaintiff's mark and to mislead and/or confuse customers and potential customers so as to misdirect them to the MicroStrategy's business for commercial purposes.

## Count I: Trademark Infringement

21. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

22. MicroStrategy is using Plaintiff's emma® trademark in commerce without authorization and in a manner that has caused and is likely to cause confusion, mistake and/or deception as to the source of MicroStrategy's goods and services.

23. MicroStrategy's willful and unauthorized use of Plaintiff's emma® trademark is an unlawful infringement prohibited by 15 U.S.C. § 1114.

24. As a direct and proximate result of MicroStrategy's conduct as described herein, Plaintiff has been damaged and is entitled to monetary damages and other relief.

25. MicroStrategy's unlawful conduct has caused Plaintiff to sustain irreparable harm and Plaintiff will continue to sustain irreparable harm in the event that

MicroStrategy's conduct continues.

## Count II: Unfair Competition

26. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

27. Through Plaintiff's emma® trademark, the public has come to identify Plaintiff's emma® services and their source.

28. Through its unauthorized use of the emma® trademark, MicroStrategy is knowingly and intentionally misrepresenting and falsely designating to the general public the affiliation, connection, association, nature, origin, source, endorsement, sponsorship and approval of such goods and services, and MicroStrategy intends to misrepresent and falsely designate to the general public the affiliation, connection, association, nature, origin, source, endorsement, sponsorship and approval of such goods and services, so as to create a likelihood of confusion by the public as to the affiliation, connection, association, nature, source, endorsement, sponsorship and approval of such goods and services.

29. MicroStrategy's conduct has been intentional and willful and calculated specifically to trade off the goodwill that Plaintiff has developed in its emma® trademark in connection with its products and services.

30. The aforementioned acts of MicroStrategy constitute false designation of origin, false enforcement and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

31. As a direct and proximate result of MicroStrategy's conduct as described herein, Plaintiff has been damaged and is entitled to monetary damages and other relief.

32. MicroStrategy's unlawful conduct has caused and/or will cause Plaintiff to sustain irreparable harm and Plaintiff will continue to sustain irreparable harm in the

event that MicroStrategy's conduct continues.

### Count III: Trademark Dilution

33. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

34. Plaintiff's emma® trademark is distinctive and, through Plaintiff's efforts, has become famous.

35. Through its unauthorized conduct referenced above, MicroStrategy has diluted, blurred and/or tarnished Plaintiff's emma® trademark and, if allowed to continue, MicroStrategy will continue to dilute, blur and/or tarnish Plaintiff's emma® trademark.

36. MicroStrategy's conduct has been intentional, willful and calculated.

37. The aforementioned acts of MicroStrategy constitute unlawful dilution in violation of 15 U.S.C. § 1125(c).

38. As a direct and proximate result of MicroStrategy's conduct as described herein, Plaintiff has been damaged and is entitled to monetary damages and other relief.

39. MicroStrategy's unlawful conduct has caused and/or will cause Plaintiff to sustain irreparable harm and Plaintiff will continue to sustain irreparable harm in the event that MicroStrategy's conduct continues.

### Count IV: Unjust Enrichment

40. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

41. Plaintiff has invested significant resources in developing goodwill associated with the emma® mark.

42. MicroStrategy has unfairly and unjustly accepted and enjoyed the benefit of Plaintiff's emma® trademark without compensating Plaintiff for the benefits it has received.

43. MicroStrategy, therefore, has been unjustly enriched, and as equity demands, Plaintiff is entitled to be paid the reasonable value of the benefits that MicroStrategy has received from its unauthorized use of the emma® trademark.

**WHEREFORE**, the plaintiff, Emma, Inc., prays that this Court:

1. Enter a judgment in favor of Plaintiff against Defendant for compensatory damages, as well as all damages available to it under 15 U.S.C. § 1117, including but not limited to treble damages, reimbursement of Plaintiff's attorneys' fees and expenses, and appropriate interest on all such damages;

2. Award Plaintiff preliminary and permanent injunctive relief restraining and enjoining Defendant from displaying Plaintiff's emma® trademark, including but not limited to doing business under the emma® mark;

3. Award Plaintiff compensatory damages under the common law for Defendant's unlawful activity; and

4. Award Plaintiff such other and further relief as it deems just and equitable.

Respectfully submitted,

MILLER & MARTIN PLLC

By: _____
David L. Johnson (BPR #18732)
Kara E. Shea (BPR #18221)
1200 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219
(615) 744-8429
kshea@millermartin.com
dljohnson@millermartin.com





Email Marketing Solutions, Targeted Email Mar... Email Marketing Solutions, Targeted Email Mar... Email Marketing Solutions, Targeted Email Mar...  9/30/2011

Case 3:11-cv-00926   Document 1   Filed 09/30/11   Page 9 of 12 PageID #: 9

# David Johnson

## LinkedIn

**Clint Smith** has sent you a message.
Date: 9/29/2011
Subject: FW: RE: Re: Inquiry regarding domain name held by Microstrategy...

On 04/11/10 2:12 PM, Jonathan Klein wrote:
--------------------
Hi Clint. If you are prepared to lease the domain for $10k per month, please let me know how many months you want to commit to...we'll agree to lease the domain for as many mo

------------------------

I appreciate the prompt reply, Jonathan. We'd be interested in exploring the lease option. Do you have a standard agreement you can send our way for review?

Thanks,
Clint


On 04/07/10 1:50 PM, Jonathan Klein wrote:
--------------------
We'd lease the domain for $10k per month. The price to purchase is $3 million.

------------------------

Jonathan,
I left you a voicemail a while back and failed to adequately follow up, but Microstrategy owns a domain name (www.emma.com) we are interested in for obvious reasons (our company is Emma, Inc.). Michael Saylor (a friend of a friend, turns out) suggested I reach out to you directly to discuss the matter. We would be happy to pay a reasonable sum for the URL, and I would certainly appreciate the chance to discuss possibilities at your convenience.

Feel free to contact me by email or phone, and have a great week.

Thanks,
Clint

View/reply to this message

Don't want to receive e-mail notifications? Adjust your message settings.

© 2011, LinkedIn Corporation



# emma
### the friendly marketplace

Home    About    Bidding Process    We ♥ Feedback

## Trade with confidence



Because everyone in the emma community has a Facebook profile, you can feel secure in your transactions. Whether it's dating, selling stuff, offering services, or finding a roommate or rideshare, emma allows you to know before you go.

Not only that, you can create your own private marketplace with just your friends, or their friends, or people with things in common who are not yet your friends. Imagine swapping jewelry with only your sorority sisters, or renting tools to people in your neighborhood. You control who gets to see what on emma, the friendly marketplace.

[Watch Videos]    [Download for iPhone]

Like    578 fans. Sign Up to see what your friends like



## Why use emma?

EXHIBIT 3

David Johnson

**From:** elle ko <elle@elleko.net>

**Date:** June 4, 2011 12:07:03 AM CDT
**To:** "hi@myemma.com" <hi@myemma.com>
**Cc:** Michael Saylor <saylor@strategy.com>
**Subject: your brand**

To Whom This May Concern-

I have known of your brand and product for some time. Although I have not used your product, I do recognize your brand; I think you have done a beautiful job with the logo.

I recently met a man who is a professional web services developer. He owns the domain "emma.com" and is currently developing a mobile app called "emma". The above would not have prompted me to contact you, but when I saw the app that is being developed, I noticed that the logotype that is currently used by them is very similar to yours.

I have pointed this out to the developer, Michael Saylor.

The logotype that Mr. Saylor's product uses is a very similar (but bold) type face as myemma's "emma" logotype with proportionately wider kerning. The logotype of the mobile app being developed is all lower case letters as well. The resemblence to myemma.com's logotype is striking. I feel that this is worth contacting you and alerting Mr. Saylor about in order to avoid unnecessary legal conflict and detriment to either of your brands.

Mr. Saylor can be contacted at saylor@strategy.com

-B. Bourbon

EXHIBIT 4